**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 26 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARK D. RICE,

Defendant - Appellant.

No. 02-6401

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. 02-CR-03-F)**

---

John W. Coyle, III (Jaye Mendros and James L. Hankins with him on the briefs), Coyle Law Firm, Oklahoma City, Oklahoma, for Defendant - Appellant.

Randal A. Sengel, Office of the United States Attorney (Robert G. McCampbell, United States Attorney, and Lisa E. Johnson, Assistant United States Attorney, on the brief), Oklahoma City, Oklahoma, for Plaintiff - Appellee.

---

Before **EBEL**, **ANDERSON**, and **McCONNELL**, Circuit Judges.

---

**ANDERSON**, Circuit Judge.

---

Defendant Mark D. Rice appeals the denial of his motion to suppress evidence seized from his home, following his conditional plea of guilty to four counts involving child pornography. He also appeals his sentence. We affirm the denial of his motion to suppress, but we remand for resentencing.

**BACKGROUND**

On November 9, 2001, Dr. Frida Deskin, the Chief Executive Officer of Astec, Inc., a technology middle school located in Oklahoma City, Oklahoma, logged onto her computer in her office to check her personal e-mail on her account with America On Line ("AOL"). When she did so, she saw several e-mails appearing to contain sexually explicit content. Because she utilizes the Gator system when she logs onto her AOL account, she was able to exit her account and see the last user name and password used. She discovered that the last person to have accessed an AOL account from her office computer had the user name of riceone2000. She recognized that name as the home e-mail user name of defendant, Mark Rice, who was a teacher at Astec.

On November 14, 2001, Dr. Deskin arranged for a computer technician to gain access to the riceone2000 e-mail messages, which remained accessible

through Dr. Deskin's computer.[1] The technician opened the e-mail messages that appeared to be sexually explicit. One e-mail dated November 7, 2001, from AlessandraSmile.com to riceone2000, contained "your request" in the subject line. The e-mails provided access to various websites which displayed images of nude and semi-nude children who appeared to be younger than eighteen. They also advertised books for purchase, many of which had titles suggesting child pornographic content. The websites also contained references to and/or descriptions of incest and child molestation, and referred to videos and articles available for purchase.

After learning about the websites accessed through the e-mails sent to Rice's user name, Dr. Deskin called Rice's previous employer in Mississippi. She learned that, while employed at a school there, Rice had used a school digital camera to photograph two young girls (under ten years old) in bikini bathing suits, without the permission or knowledge of the girls' parents. Rice had stated that he planned to use the photographs as an overlay in one of his classes.

Dr. Deskin reported this information to the Oklahoma City Police. On November 16, 2001, Oklahoma City Police Child Abuse Detective Priscilla Helm

---

[1]The technical details of how Dr. Deskin and the computer technician gained access to e-mails sent to riceone2000 are not completely clear. Rice does not dispute, however, that they gained access to e-mails which were in fact sent to his account.

applied for and obtained a state search warrant, based upon the information Dr. Deskin had supplied her. Detective Helm and other police officers executed the search warrant on that same day, seizing numerous computers, computer hardware and software, compact discs, floppy discs, videotapes and digital cameras. One of the videotapes seized from Rice's apartment depicted Rice fondling a three- or four-year-old girl and then masturbating in plain view of the camera. Evidence indicated that the incident occurred at Rice's former school in Mississippi. Some of the compact discs seized contained images of nude, pre-pubescent children with their genitals clearly exposed. One of Rice's computers contained twenty-five images of a nude three- or four-year-old girl in a bathroom. The images clearly focused on her genitals. Law enforcement officials subsequently learned that the child depicted was a local Oklahoma City resident and that the bathroom was Rice's apartment bathroom in Oklahoma City.

A federal grand jury returned a four-count indictment charging Rice with one count of producing child pornography, in violation of 18 U.S.C. § 2251(a) (the photographs of the three- or four-year-old Oklahoma City girl in his bathroom), one count of transporting child pornography in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(1) (the video of himself and the young girl made at his former school in Mississippi), and two counts of possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252A(a)(5)(B)

(count three relating to the images on his computer depicting the same young girl as in count one; count four relating to the computer discs containing images of young girls with their genitals prominently displayed).

Rice filed a motion to suppress the evidence seized pursuant to the search warrant. After conducting a hearing, the district court determined that the search warrant was supported by probable cause and that even if the warrant was not, the Leon good faith exception applied to the execution of the search. Rice thereafter entered a conditional plea of guilty to all counts, reserving his right to appeal the denial of his motion to suppress.

After his guilty plea, but prior to sentencing, Rice, acting pro se, filed civil actions against Detective Helm, the Oklahoma City Police Department, and the two Assistant United States Attorneys assigned to his case. He filed numerous pleadings in connection with these actions.[2] Rice has accused law enforcement personnel and the prosecution of manufacturing evidence, intentionally lying to and deceiving the court, and obstructing justice, and he asserts that the case against him should be dismissed.

At sentencing, the presentence report ("PSR") grouped counts one and three pursuant to United States Sentencing Commission, Guidelines Manual §3D1.2(b)

---

[2]The government has filed a motion to supplement the record on appeal with some of these documents. We provisionally granted the motion, subject to a final determination by the panel. We now grant the motion.

(2002), because they involved "the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." Although counts two and three initially had lower base offense levels, the cross-reference contained in §2G2.2(c) applied because Rice produced the child pornography charged in those counts. Accordingly, §2G2.1's base offense level of 27 applied.

The base offense levels for counts one, two, and three were increased by four levels pursuant to §2G2.1(b)(1) because they involved a victim under the age of twelve, and by two more levels pursuant to §2G2.1(b)(2) because the victim was in the care of the defendant. Thus, the total base offense level for counts one, two, and three was 33. The base offense level for count four (possession of child pornography), after enhancements, was 21.

After adding a two level increase pursuant to the multiple count adjustment of §3D1.4, the PSR calculated a combined adjusted offense level of 35. The district court adopted as its findings the uncontested portions of the PSR and found Rice's total combined offense level was 35. The district court denied Rice his requested acceptance of responsibility adjustment, finding that, although Rice had pled guilty, he had accepted responsibility in only the "most technical and synthetic sense" because in the numerous pleadings filed in his civil actions against law enforcement personnel and the prosecutors, Rice "not only challenged

the legality of the search that took place in November 2001, he has also challenged the factual basis for the prosecution." Tr. of Sentencing at 64-65, R. Vol. 3. Accordingly, the court concluded that Rice had failed to carry his burden of demonstrating acceptance of responsibility.

The court also determined that, while Rice was properly initially assessed a criminal history category of I because he had no prior convictions, that category did not adequately reflect the seriousness of Rice's past criminal conduct and the likelihood that he would commit crimes again in the future. More specifically, Rice's criminal history under the Guidelines failed to take into account the fact that, in making the video of himself and the young girl in Mississippi, the transportation of which count two addressed, Rice had violated both a Mississippi law (child molestation) and a federal law (production of child pornography), but had not been charged with either offense.[3] In view of that prior similar uncharged criminal conduct, the court concluded that Rice's actual past conduct was "atypical of defendants with a category I criminal history" so the court departed

_____

[3]Count one's production of child pornography charge related to the pictures of the young Oklahoma City girl which Rice produced after moving from Mississippi to Oklahoma.

upward to a criminal history category III pursuant to §4A1.3.[4]  Tr. of Sentencing at 80, R. Vol. 3.

The court then sentenced Rice to 262 months' imprisonment, assessed as follows:  240 months for count one, 180 months for count two, of which twenty-two months were to run consecutively to count one, and sixty months for counts three and four.  The court also assessed $9,216.00 in restitution and imposed three years of supervised release.

Rice appeals, arguing (1) the court erred in denying his motion to suppress evidence seized at his apartment because the affidavit in support of the search warrant failed to establish probable cause, the search warrant was too broad and the good faith exception did not salvage the search; (2) in sentencing Rice the

---

[4]The version of §4A1.3 in effect at the time of Rice's sentencing provided:

Adequacy of Criminal History Category (Policy Statement)

If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range.  Such information may include, but is not limited to, information concerning:

. . . .

(e) prior similar adult criminal conduct not resulting in a criminal conviction.

USSG §4A1.3 (2002).

court erroneously double counted when it used the same prior conduct (producing child pornography in Mississippi) to both increase his base offense level on count two and to increase his criminal history category; and (3) the court erred in failing to grant him a downward departure for acceptance of responsibility.

**DISCUSSION**

**I. Search Warrant**

Rice challenges the district court's denial of his motion to suppress, arguing that the affidavit supporting the search warrant failed to establish probable cause for the search of his apartment. "When reviewing a district court's denial of a motion to suppress . . . , we accept the court's findings of fact unless clearly erroneous and consider the evidence in the light most favorable to the government." United States v. Bennett, 329 F.3d 769, 773 (10th Cir. 2003) (internal quotation marks omitted). We review de novo the court's legal conclusion as to the sufficiency of the warrant. United States v. Campos, 221 F.3d 1143, 1146 (10th Cir. 2000).

In deciding whether probable cause exists to issue a warrant, the issuing judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair

probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983); see also United States v. Simpson, 152 F.3d 1241, 1246 (10th Cir. 1998). Even if we conclude that the warrant was not supported by probable cause, we may still uphold that validity of the search if we conclude that the good-faith exception to the exclusionary rule contained in United States v. Leon, 468 U.S. 897 (1984) applies. "The applicability of the Leon good-faith exception is a question of law which this court reviews *de novo*." United States v. Rowland, 145 F.3d 1194, 1206 (10th Cir. 1998).

Rice argues the affidavit provided by Detective Helm contains generalizations about what collectors of child pornography might have or generally have in their possession, but little that is specific to Rice: "The information with particularity to Mark Rice is sparse, and wholly insufficient to establish probable cause to believe (a) he committed the specific crime of possession of child pornography, and (b) that evidence of such crime would be located in his **home**." Def.'s Br. at 9. Rice argues the affidavit contains no information suggesting that Rice ever opened the sexually suggestive e-mails discovered by Dr. Deskin, or that they were anything other than unsolicited e-mails known as "spam." Further, Rice argues, the affidavit does not specify how the sexually suggestive websites listed in the affidavit were linked to the

-10-

e-mails, nor does it indicate that Rice actually ever visited those websites or obtained or possessed anything which was in fact child pornography.

The district court held that the affidavit provided the issuing judge with sufficient information from which he could reasonably conclude there was probable cause to believe that evidence of child pornography would be found at Rice's home. The court alternatively held that, even if the affidavit failed to establish probable cause, suppression of the evidence seized was unnecessary because the officers executing the warrant acted in objectively reasonable, good-faith reliance on the warrant. See Leon, 468 U.S. at 922.

The affidavit stated that several sexually explicit e-mails had been received by a person with the AOL e-mail account riceone2000, and that that user name belonged to defendant Rice. The e-mails provided access to websites such as (1) AlessandraSmile.com, which referenced books with titles such as "Pedophiles on Parade" and "Erotic Innocence: The Culture of Child Molesting," and contained a "comic" section which, inter alia, described a comic called "Tart #1 & #2" as "the most perverse commercial comic to date, featuring Tees, a young teenage nymphomaniac with spindly limbs and an oversize clitoris, and Michael, her older muscular (and much larger) brother lover. Nothing is left to the imagination and there is plenty of explicit (and messy) sex"; (2) Nude Life, which contained pictures of nude and semi-nude children; (3) "Daddy's Girls," which was

-11-

described as providing "fantasies about daddy-daughter relationships and older men with young girls that go beyond what society allows. The site censors don't want you to see"; and (4) "Daddy's Dirty Movies." Aff. for Search Warrant at 4, R. Vol. 1 at tab 28. The affidavit further stated that Dr. Deskin knew that Rice had at least one computer at his home, as well as a digital camera/camcorder. The affidavit also related that Dr. Deskin had contacted Rice's previous employer in Mississippi and been told of the incident involving the unauthorized photographs of two young girls in bikinis.[5] Finally, the affidavit stated that, based on Detective Helm's training and experience, it was highly likely that collectors of child pornography and people with a sexual attraction to children maintain "child pornography materials, including such items as photographs, negatives, magazines, films, videotapes, correspondence, mailing lists, catalogs, and tape recordings in the privacy and security of their own home." Id. at 5.

We turn directly to the issue of whether the Leon good-faith exception applies to the search of Rice's apartment. See United States v. Price, 265 F.3d 1097, 1102 (10th Cir. 2001) ("If this court determines that the officers acted in good faith reliance on the search warrant, it does not need to reach the issue of whether probable cause existed for the warrant."). The Court in Leon recognized

_____

[5]This incident gives rise to the concomitant inference that Rice induced the young girls to disrobe and put on the bikinis.

-12-

that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." Leon, 468 U.S. at 918. One situation in which the Court recognized suppression might be appropriate, and the situation which Rice argues existed in this case, is when the warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" Id. at 923 (quoting Brown v. Illinois, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part)); see also Rowland, 145 F.3d at 1207. Further, "[i]n determining whether the Leon good-faith exception should be applied, the 'good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.'" Id. (quoting Leon, 468 U.S. at 922 n.23).

We hold that the affidavit in this case is not such a bare-bones and conclusory affidavit that it would "render official belief in [the existence of probable cause] entirely unreasonable." To the contrary, it detailed a number of e-mails indisputably sent to Rice's account, which provided access to websites with titles and/or items for sale suggestive of child pornographic content. It further recounted an incident at Rice's former school which, at a minimum, suggested an unhealthy and inappropriate interest in the bodies of young girls.

-13-

Rice argues that the failure to further investigate and find additional corroboration for some of the information contained in the affidavit "renders any claim of good faith disingenuous." Defendant/Appellant's Br. at 22. However, there is no evidence that Detective Helm was anything other than conscientious and reasonable in her collection of information in support of the affidavit. Indeed, the district court specifically found that "it ha[d] not been established that the officer was dishonest or reckless in preparing the affidavit." Tr. at 64, R. Vol. 2. Nor is there any evidence that she had reason to doubt the veracity or reliability of Dr. Deskin or the person providing information about Rice's conduct at his former school in Mississippi. Rice places great reliance on United States v. Weber, 923 F.2d 1338 (9th Cir. 1991), in which the Ninth Circuit held that a search warrant was so vague and conclusory that it failed to establish probable cause. The court further held that the search was not salvaged by the Leon good-faith exception because "since the government planned the undercover delivery of the items that provided the occasion for the search, the government had complete control over the timing of the search." Id. at 1346. This case is distinguishable from Weber, not only because of the level of specificity contained in the affidavit supporting the search warrant, but also in terms of the urgency facing the officers. Accordingly, the evidence seized from Rice's apartment need not be suppressed.

## II.  Double Counting

Count two of the indictment to which Rice pled guilty involved transporting a videotape containing child pornography across state lines, in violation of 18 U.S.C. § 2252A(a)(1).  The video was the one of himself and a young girl which Rice had produced in Mississippi.  The guideline applicable to a violation of § 2252A(a)(1) is USSG §2G2.2, which provides a base offense level of 17.  The cross-reference contained in §2G2.2(c) stipulates, however, that "[i]f the offense involved causing . . . a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, apply §2G2.1."  Section 2G2.1 provides a base offense level of 27.  Thus, because Rice "caus[ed] . . . a minor to engage in sexually explicit conduct" in order to produce the video he then transported from Mississippi to Oklahoma, his base offense level increased from 17 to 27.

The court also used the conduct underlying Rice's production of that videotape to increase his criminal history category pursuant to §4A1.3.  Rice argues that double use amounts to impermissible double counting.  We agree with Rice that the double use of the Mississippi conduct violated the Sentencing Guidelines.

"We review the district court's interpretation and application of the Sentencing Guidelines de novo and its factual findings for clear error."  United

States v. Dillon, 351 F.3d 1315, 1318 (10th Cir. 2003) (further quotation omitted). The district court properly used Rice's prior uncharged conduct in Mississippi as relevant conduct for purposes of applying the cross-reference in §2G2.2(c) and increasing his base offense level for count two. See United States v. Tagore, 158 F.3d 1124, 1129 (10th Cir. 1998) ("We therefore hold that the term 'offense' in § 2G2.2(c)(1) includes all relevant conduct as defined by § 1B1.3(a)."). However, as §4A1.2 of the Guidelines makes clear, had Rice been convicted and sentenced for that conduct, the district court could not have used that prior sentence to increase his criminal history category. Section 4A1.2 expressly states that a prior sentence which can add criminal history points "means any sentence previously imposed upon adjudication of guilt . . . for conduct not part of the instant offense." USSG §4A1.2(a)(1). Because the guideline further provides that conduct that is "part of the instant offense" is "relevant conduct" under §1B1.3, USSG §4A1.2, comment. (n.1), "a prior sentence counts as criminal history if it does *not* involve relevant conduct under §1B1.3." United States v. Torres, 182 F.3d 1156, 1159 (10th Cir. 1999). Accordingly, we stated in Torres that "[i]f the district court did take the prior sentence into account [as relevant conduct] in calculating the offense level, then it is clear that to prevent double counting the court cannot use that same sentence in

its criminal history calculation." Id. at 1160 (citing USSG §4A1.2(a)(1) & comment. (n.1)).

The government argues that Torres involved the calculation of criminal history under §4A1.2, not §4A1.3, and therefore is irrelevant to this case. We disagree. "[T]he definition of the term 'prior sentence' in § 4A1.2 controls the meaning of the term in § 4A1.3: 'prior sentence' does not include relevant conduct." United States v. Cade, 279 F.3d 265, 271 (5th Cir. 2002). Thus, prior sentences for relevant conduct cannot be used under either §4A1.2 or §4A1.3. See id. ("[W]hen a district court determines that a sentence is relevant conduct to the instant offense, and considers it as a factor in adjusting the offense level, such sentence cannot then be considered as a basis for a criminal history category departure under § 4A1.3(a)."); see also United States v. Hunerlach, 258 F.3d 1282, 1286 (11th Cir. 2001) ("When a district court determines that the conduct underlying a conviction is relevant conduct to the instant offense, and considers it as a factor in calculating the base offense level, it cannot then be simultaneously considered as a 'prior sentence' under Section 4A1.3.")

In this case, the district court used uncharged Mississippi conduct to depart upward under §4A1.3 from the criminal history category calculated under §4A1.2. While §4A1.3 contemplates upward departures for "prior similar adult criminal conduct not resulting in a criminal conviction" as well as for "prior sentences," it

seems anomalous, if not logically inconsistent, not to allow upward departures for relevant conduct resulting in a conviction and sentence, but to allow upward departures for relevant conduct not resulting in a conviction. See United States v. Jones, 948 F.2d 732, 737 (D.C. Cir. 1991) (noting that "if [prior similar conduct] was conduct related to the current offenses, . . . then it would have been error for the district court to include it as part of appellant's criminal history.") If the court could not use a prior sentence involving relevant conduct both to increase Rice's base offense level and to increase his criminal history category under §4A1.3, we see no reason to permit such double use when the conduct at issue is uncharged and did not result in a sentence. It was improper for the court to do so. We therefore remand for resentencing.

### III. Acceptance of Responsibility

Finally, Rice argues the district court erred in failing to grant him a downward adjustment for acceptance of responsibility. He argues that his conditional guilty plea demonstrates that he has accepted responsibility and that he has never asserted his factual innocence.

We review the district court's determination of whether a defendant has accepted responsibility for clear error. United States v. Saffo, 227 F.3d 1260, 1271 (10th Cir. 2000). Because "[t]he sentencing judge is in a unique position to

-18-

evaluate a defendant's acceptance of responsibility . . . the determination of the sentencing judge is entitled to great deference on review." USSG §3E1.1, comment. (n.5). After carefully reviewing the record in this case, we conclude that the district court did not clearly err in denying Rice a downward adjustment for acceptance of responsibility.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Rice's motion to suppress and we REMAND for resentencing in accordance with this decision.

F I L E D
United States Court of Appeals
Tenth Circuit

APR 28 2005

PATRICK FISHER
Clerk

PUBLISH

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARK D. RICE,

Defendant - Appellant.

No. 02-6401

**ORDER ON REMAND FROM
THE UNITED STATES SUPREME COURT
(S. Ct. No. 04-5520)
(D.C. No. 02-CR-03-F)**

Before **EBEL**, **ANDERSON**, and **McCONNELL**, Circuit Judges.

**ANDERSON**, Circuit Judge.

Defendant/Appellant Mark D. Rice pled guilty to four counts relating to the production, transportation and possession of child pornography, and was sentenced to 262 months' imprisonment, followed by three years of supervised release, and was assessed $9,216.00 in restitution. We affirmed his conviction, but reversed his sentence and remanded for resentencing because the district court

erroneously double-counted certain uncharged conduct in calculating his sentence under the United States Sentencing Commission, Guidelines Manual ("USSG"). United States v. Rice, 358 F.3d 1268 (10th Cir. 2004) ("Rice I"). The Supreme Court summarily reversed and remanded our decision for further consideration in light of United States v. Booker, 125 S. Ct. 738 (2005). See Rice v. United States, 125 S. Ct. 1028 (2005). The parties have jointly requested that we remand this case for resentencing.

We accordingly VACATE our order dated April 14, 2005, directing the parties to file supplemental briefs, we REINSTATE all non-sentencing portions of our previous opinion ("Rice I"), as well as that portion of the opinion holding that the district court's double-counting in this case is prohibited under the Guidelines, and we REMAND for resentencing in accordance with Booker. The mandate shall issue forthwith.