**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 2 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.

MARVIN R. VASQUEZ,

  Defendant - Appellant.

No. 03-4121

(D. Utah)

(D.C. No. 02-CR-564-JTG)

---

**ORDER AND JUDGMENT** *

---

Before **SEYMOUR** , **ANDERSON** , and **EBEL** , Circuit Judges.

---

On September 18, 2002, Marvin R. Vasquez was charged with possession

of a controlled substance with intent to distribute, in violation of 21 U.S.C.

§ 841(a)(1) and 18 U.S.C. § 2.  He moved to suppress evidence discovered during

a search of his car.  After holding an evidentiary hearing, the district court denied

the motion.  Vasquez entered a conditional plea of guilty, reserving his right to

appeal the denial of his motion to suppress.  He was sentenced to forty-six months

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

imprisonment, followed by forty-eight months of supervised release. We affirm the denial of his motion to suppress.

## BACKGROUND

On September 4, 2002, Utah Highway Patrol Trooper Chad McWilliams was traveling northbound on I-15 at approximately seventy-five miles per hour, the posted maximum speed limit, near Beaver, Utah. As he approached a slight uphill grade, he passed a northbound Toyota Camry being driven by Vasquez in the right-hand lane. After Trooper McWilliams passed the Camry, he observed the Camry "dramatically slow down." R. Vol. II at 9. McWilliams thought this was unusual. He therefore slowed down as well, to determine if there was a problem with the Camry.

McWilliams switched to the right-hand lane, and Vasquez switched to the left-hand lane. Trooper McWilliams continued to slow his vehicle down, to approximately fifty-five to sixty miles per hour. The Camry remained in the left lane, and it too slowed down to approximately fifty-five to sixty miles per hour. The Camry continued in the left lane for 1.5 to 2 miles before it finally passed the trooper's patrol car. By this time, there were two or three cars and a semi-truck behind the Camry.

Trooper McWilliams determined that the Camry driven by Vasquez was in violation of Utah Code Ann. § 41-6-55, which prohibits a vehicle traveling in the left-hand lane from impeding the flow of traffic. [1] McWilliams moved over into the left-hand lane behind Vasquez and activated his lights, which also activated his video camera. The Camry and the trooper's car moved back into the right-hand lane after passing a semi-truck, and pulled over to the side of the road.

McWilliams approached the Camry on the passenger side. He observed Vasquez as well as a passenger. McWilliams testified that he noticed a strong odor of cologne coming from the car, he observed that the airbag compartment looked like it had been damaged or altered, and he observed the passenger apparently attempting to hide a map under his leg. McWilliams requested Vasquez's driver's license and vehicle registration. Vasquez produced a valid

---

[1] Section 41-6-55 provides in pertinent part as follows:

(3) On a highway having more than one lane in the same direction, the operator of a vehicle traveling in a left lane shall, upon being overtaken by another vehicle in the same lane, yield to the over-taking vehicle by moving safely to the right, and may not impede the movement or free flow of traffic in a left lane except:
     (a) when overtaking and passing another vehicle proceeding in the same direction;
                    . . . .
     (c) when reasonably necessary in response to emergency conditions . . . .

Utah Code Ann. § 41-6-55(3).

license issued in his name from Rhode Island, as well as proper vehicle registration in Vasquez's name from Rhode Island.

After receiving somewhat inconsistent answers from Vasquez concerning his itinerary, [2] McWilliams asked permission to search the car, which Vasquez granted. McWilliams and another trooper who had come to provide back-up discovered cocaine in the car's trunk.

At his suppression hearing, Vasquez testified that McWilliams was not traveling northbound alongside Vasquez when the trooper first spotted Vasquez's car, but, rather, was traveling southbound and had to turn around in the median to drive alongside Vasquez. He also testified that the only other car on the road was a semi-truck in the right-hand lane at the time he was stopped by Trooper McWilliams.

Vasquez appeals, arguing that district court erred in concluding that McWilliams had a reasonable and articulable suspicion that Vasquez had violated Utah Code Ann. § 41-6-55. Specifically, Vasquez alleges McWilliams was unaware of two exceptions to the bar against impeding traffic while traveling in

---

[2]Initially, Vasquez reported that they had been in Las Vegas gambling, and then later said they had not gambled because they had no money. McWilliams also testified that Vasquez had said they had left Las Vegas some eleven hours before the traffic stop occurred, that Vasquez said they had stopped for three hours or so along the way, and that McWilliams knew from personal experience that it took approximately three to three and one-half hours to drive from Las Vegas to the location of the traffic stop.

the left-hand lane, either of which excused Vasquez's conduct in remaining in the left-hand lane while cars backed up behind him.

**DISCUSSION**

"When reviewing a district court's denial of a motion to suppress . . . , we accept the court's findings of fact unless clearly erroneous and consider the evidence in the light most favorable to the government." United States v. Rice, 358 F.3d 1268, 1273 (10th Cir. 2004) (further quotation omitted). "At a hearing on a pre-trial motion to suppress, the credibility of the witnesses and the weight given to the evidence, as well as the inferences and conclusions drawn therefrom, are matters for the trial judge." United States v. Vercher, 358 F.3d 1257, 1261 (10th Cir. 2004) (further quotation omitted).

The validity of a traffic stop depends on whether "this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995) (en banc) (internal quotation marks omitted); see also Whren v. United States, 517 U.S. 806, 817 (1996). Reasonable suspicion, in turn, requires that the officer provide "'some minimal level of objective justification.'" Vercher, 358 F.3d at 1261 (quoting INS v. Delgado, 466 U.S. 210, 217 (1984)). Furthermore, "reasonable

-5-

suspicion may be supported by an 'objectively reasonable' good faith belief even if premised on factual error." Id.; see also United States v. Callarman, 273 F.3d 1284, 1287 (10th Cir. 2001) (upholding a traffic stop based on a reasonable articulable suspicion that a cracked windshield substantially obstructed the driver's view (the standard required by statute) regardless of whether or not the crack actually constituted a violation of state law); United States v. Allegree, 175 F.3d 648, 650 (8th Cir. 1999) (upholding a traffic stop based on the mistaken, but reasonable, belief that defendant had illegal headlights).

In this case, the district court found, consistent with McWilliams' testimony, that the "Camry remained in the left lane for 1.5 to 2 miles, then the Camry finally passed the trooper." Mem. Decision at 8, R. Vol. I, doc. 24. The court further found that "[b]y the time the Camry passed McWilliams there were 2 to 3 cars and a semi-truck backed up behind the Camry in the left lane, with an additional semi-truck that was forced to pass the Camry in the right lane." Id.

Vasquez argues that either one of two exceptions to section 41-6-55 applied, excusing his impeding traffic in the left lane. First, he argues he was simply passing Trooper McWilliams' vehicle within the meaning of section 41-6-55(3)(a). We disagree. The district court found that "the facts in this case and the testimony of McWilliams sufficiently indicates that Vasquez could have changed back into the right lane after about thirty seconds so as not to impede

-6-

traffic." Mem. Decision at 5, R. Vol. 1, doc. 24. That determination is not clearly erroneous. Second, Vasquez argues that McWilliams created an "emergency condition" within the meaning of section 41-6-55(3)(c) when he slowed his vehicle down to fifty-five to sixty miles per hour. We reject that proposition.

We therefore affirm the district court's conclusion that McWilliams had an objectively reasonable belief that Vasquez's driving violated Utah Code Ann. § 41-6-55 and that none of the exceptions to that section applied. We accordingly affirm the denial of Vasquez's motion to suppress.

## CONCLUSION

For the foregoing reasons, the decision of the district court denying Vasquez's motion to suppress is AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge